The BOLER COMPANY, Plaintiff,

v.

WATSON & CHALIN MANUFACTURING, INC., Defendant

No. 5:03CV1266.

United States District Court, N.D. Ohio, Eastern Division.

June 24, 2004.

Opinion and Order Amending Judgment March 28, 2005.

Opinion and Order Denying Motion to Amend March 28, 2005.

David L. Applegate, Williams Montgomery & John, Chicago, OH, David P. Dureska, II, Buckingham, Doolittle & Burroughs, Canton, OH, Geoffrey R. Myers, Hall Priddy Myers & Vande Sande, Potomac, MD, Lawrence S. Turner, Turner, May & Shepherd, Warren, OH, Mark J. Skakun, Philip R. Wiese, Buckingham, Doolittle & Burroughs, Akron, OH, Otis W. Carroll, Wesley Hill, Ireland, Carroll & Kelley, Tyler, TX, Peter C. John, Williams, Montgomery & John, Chicago, IL, for Plaintiff.

John C. Fairweather, Brouse McDowell, Akron, OH, for Defendant.

## ORDER AND OPINION

ADAMS, District Judge.

The Boler Company ("Boler") filed suit against Watson & Chalin Manufacturing, Inc. ("Watson"), alleging that Watson's "Integra" suspension infringes U.S. Patent No. 5,366,237 (the " '237 patent"), to which Boler is the sole assignee of record. Watson's Motion for Summary Judgment of Non–Infringement is now before the Court. (Doc. # 29) A hearing was held on the motion on March 12, 2004. The Court has been advised, having reviewed the pleadings, motion, opposition and reply thereto, exhibits, argument at the hearing

and applicable law. For the reasons that follow, this Court GRANTS Defendants' motion for summary judgment.

## FACTS

The '237 patent, issued November 22, 1994, is a continuation of now abandoned U.S. Patent Application No. 07/963,450, which was filed on October 19, 1992. In its Complaint, Boler alleges Watson's Integra suspension infringes claims 1–10 and 12–29 of the '237 patent. In its response to Watson's Motion for Summary Judgment, Boler's narrowed its patent infringement allegation to that of independent claims 1 and 13.

The '237 patent teaches an improved beam-type axle suspension particularly applicable to tractor trailer applications. Claims 1 and 13 are drawn to specific improvements over prior art leading or trailing beam-type axle bearing suspensions systems.

In a prior suit before the Northern District of Ohio [1], Boler alleged the '237 patent was infringed by a defendant other than Watson. The court held a Markman hearing to properly construe the claims previously at issue, from which the court adopted Boler's arguments affirmatively distinguished the scope of claims 1 and 13 from that of 16 to support its proposed construction of claim 16.[2] Following the Markman hearing, the court issued a memorandum opinion and order construing the disputed terms of the '237 patent

claims at issue. Prior to trial, the parties reached settlement and Boler's patent infringement action was dismissed with prejudice.

In the course of the prior suit, Boler was alerted to the fact it failed to disclose pertinent prior art to the United States Patent and Trademark Office ("USPTO") during prosecution of the '237 patent. The undisclosed prior art was Boler's own Hendrickson Turner TDC Model Suspension ("TDC") system. Reexamination of the '237 patent was subsequently sought in light of the TDC suspension. The USPTO notified Boler that the TDC suspensions system raised a substantial new question of patentability affecting the claims of the '237 patent. In response, Boler submitted arguments distinguishing the prior art TDC system from the invention taught and claimed by the '237 patent.[3] The USPTO Examiner accepted Boler's distinguishing arguments, thus maintaining the '237 patent's presumption of validity.

Watson timely filed, and now seeks, summary judgment of non-infringement on Boler's patent infringement claim. Watson asserts, in its motion, that Boler is barred by both judicial and prosecution history estoppel from asserting interpretations of claims 1 and 13 inconsistent with those previously presented to the district court or the USPTO. Watson contends an essential element of claims 1 and 13, as previously defined by Boler, is not present

1. The Boler Company v. Neway Anchorlock Inter., Case No. 5:99–CV–1934

2. To distinguish claim 16, Boler asserted that using a 360 degree weld to rigidly connect the axle to the beam refers to elements of the invention set forth in claims 1 and 13, not claim 16. Boler further provided the court with Exhibits A and B, stating that they show, respectively, the inventions set forth in Claims 1 and 13. Exhibits A and B both show an axle-to-beam connection wherein the axle passes though orifice formed in the sidewall

of the each beam and wherein the orifice completely encompasses the axle by 360 degrees thus allowing a 360 degree weld.

3. Boler distinguished the prior art TDC suspension from the claims of the '237 patent by arguing that the TDC suspensions piecemeal construction, of the orifice forming beam, does not substantially surround the axle, as required by the claims of the '237 patent, due to the two orifice forming beams being welded together by bridge plates.

in the Integra suspension, thus precluding a finding of patent infringement.

Boler contends judicial estoppel is inapplicable to cases resulting in settlement for no position was successfully asserted. Boler further contends it is not bound by claim interpretations previously asserted to the district court, even if inconsistent with current assertions, since the prior suit concluded in settlement. Accordingly, Boler asserts a material fact exists as to the scope of claims 1 and 13 so as to preclude summary judgment.

## LAW

■ Summary Judgment is as appropriate in a patent case as in any other case. See *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1463 (Fed.Cir. 1998) ("Although an infringement analysis usually involves both issues of law and question of fact, summary judgment of noninfringement may still be proper."); *C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*, 911 F.2d 670, 672 (Fed.Cir.1990) (noting summary judgment is appropriate in patent cases).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P 56(c). The party opposing a properly supported summary judgment motion " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir.1992) ("Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record."); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied, Superior Roll Forming Co. v. InterRoyal Corp.*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must construe the evidence presented in the light most favorable to the non-movant and draw all justifiable inferences in the non-movant's favor. *United States v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## DISCUSSION

### A. Patent Infringement

Determination of patent infringements requires a two step analysis. First, the claim must be properly construed to determine its scope. Second, a determination must be made as to whether the accused method or product infringes the claims as properly construed. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581–82 (Fed.Cir.1996)

### 1. Claim Construction

The first step, claim interpretation, is question of law exclusively within the prov-

ince of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In construing a claim, a court may consider both the intrinsic and extrinsic evidence, but should first examine the intrinsic evidence of record, *i.e.* the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Vitronics*, 90 F.3d at 1582 (Fed.Cir.1996).

Boler asserts Watson's Integra suspension infringes claims 1 and 13 of the '237 patent. Claims 1 and 13 are drafted as improvement-type claims, pursuant to 37 C.F.R. 1.75(e), wherein the preamble comprises a general description of all the elements or steps of the claimed combination which are conventional or known. The body of claims 1 and 13 are drafted utilizing means-plus function language, pursuant to 35 U.S.C. § 112 ¶ 6. Claims 1 and 13 read:

1. In an axle bearing suspension system of the leading or trailing beam type for a wheeled vehicle wherein external forces imposed on the vehicle to which said suspension system is attached, result in torsional forces being imposed on said axle such that a portion of said axle is placed in compression and a portion of said axle is placed in tension to alter the cross-sectional configuration of said axle, said suspension system including a pair of elongated beams, one of said beams being located adjacent each side of said vehicle and each spaced from the other, each said beam including a pair of side walls extending in substantially the vertical direction with respect to said vehicle, said axle being of a hollow cross-sectional configuration and extending across substantially the entire width of the vehicle and having at least one wheel located on each end thereof, a pneumatic bellows located on each said beam, a hanger bracket located on one end of each said beam for connecting said beam to a frame member of said vehicle, means for rigidly connecting said axle to each said beam, and a pivot connection for resiliently connecting said beam to said hanger bracket, the improvement comprising:

wherein said means for rigidly connecting said axle to said beam includes means for preventing said alteration of the cross-sectional configuration of said axle, comprising an orifice in each said side wall of each said beam through which said axle extends and which substantially surrounds said axle and is rigidly attached thereto, said axle extending completely through and beyond each of said orifices, whereby said axle cross-sectional configuration is prevented from assuming a cross-sectional configuration substantially different from an unaltered configuration when said torsional forces are imposed upon said axle.

13. In an axle bearing suspension system of the leading or trailing beam type for a wheeled vehicle wherein external forces imposed on the vehicle to which said suspension system is attached, result in torsional forces being imposed on said axle such that a portion of said axle is placed in compression and a portion of said axle is placed in tension thereby tending to alter the cross-sectional configuration of said axle, said suspension system including a pair of elongated beams, one of said beams being located adjacent each side of said vehicle and each spaced from the other, each said beam including a pair of side walls extending in substantially the vertical direction with respect to said vehicle, said axle extending across

substantially the entire width of the vehicle and having at least one wheel located on each end thereof, a pneumatic bellows located on each said beam, a hanger bracket located on one end of each said beam for connecting said beam to a frame member of said vehicle, means for rigidly connecting said axle to each said beam, and a pivot connection for resiliently connecting said beam to said hanger bracket, the improvement comprising:

said means for rigidly connecting said axle to said beam comprising an orifice in each said side wall of each said beam through which said axle extends and which substantially surrounds said axle and is rigidly attached thereto, and further comprising sleeve means rigidly attached to and substantially surrounding said axle and wherein said orifice in said beam substantially surrounds said sleeve means and is rigidly attached thereto, said axle extending completely through and beyond each of said orifices and said sleeve means, whereby said axle cross-sectional configuration is prevented from assuming a cross-sectional configuration substantially different from an unaltered configuration when said torsional forces are imposed upon said axle.

## 2. Means–Plus Function Language

An element, in a claim for a combination, may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof. 35 U.S.C. § 112 ¶ 6. Such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. *Id.*

■ Patentees are required to disclose, in the specifications, some enabling means for accomplishing the function set forth in the "means-plus function" limitation. *D.M.I., Inc., v. Deere & Co.,* 755 F.2d 1570, 1574 (Fed.Cir.1985). At the same time, there is and can be no requirement that applicants describe or predict every possible means of accomplishing that function. *Id.*

■ An element of a claim described as a means for performing a function, if read literally, would encompass any means for performing that function. However, the sixth paragraph of 35 U.S.C. § 112 operates to cut back on the types of means which could literally satisfy the claim language. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580 (Fed.Cir.1989). To satisfy a means-plus-function limitation, under 35 U.S.C. § 112 ¶ 6, the accused device must perform the identical function required by the limitation and must incorporate the structure disclosed in the specification, or its substantial structural equivalent, as the means for performing that function. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1388–89 (Fed.Cir.1992). Interchangeability is a useful consideration when determining whether two specific structures are equivalents under 35 U.S.C. § 112 ¶ 6. *Rite–Hite Corp. v. Kelley Co., Inc.,* 819 F.2d 1120, 1124 (Fed.Cir.1987) (citing *Graver Tank and Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)).

Watson's motion for summary judgment of non-infringement properly asserts that Boler is estopped from claiming Watson's Integra suspension incorporates the structure disclosed in the '237 patent specification, or its substantial structural equivalent. As explained herein, Boler's previous assertions regarding the metes and bounds of the '237 patent, made under oath to the court and the USPTO, estops Boler from asserting Watson's In-

tegra suspension meets the structural limitation of axle-to-beam interface required by claims 1 and 13 of the '237 patent.

### 3. Judicial Estoppel

■ The doctrine of judicial estoppel is based upon the proposition that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not assume a contrary position simply because his interests have changed. *Wang Lab., Inc. v. Applied Computer Sciences, Inc.,* 958 F.2d 355, 358 (Fed.Cir.1992). This doctrine is designed to protect the integrity of the judicial process and prevent parties from "playing 'fast and loose' with the courts.'" *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598–99 (6th Cir.1982). The doctrine of judicial estoppel places a limit on litigants who argue whatever state of facts seems advantageous at a point in time, and who argue a contradictory state whenever self-interest may dictate a change. *Id.*

In response to Watson's Motion for Summary Judgement, Boler contends that, as a matter of law, judicial estoppel cannot exist in the present case since the prior case was settled. This court finds Boler's position is without merit.

■ The doctrine of judicial estoppel, in the Sixth Circuit, forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in a prior proceeding. *United States v. Owens,* 54 F.3d 271, 275 (6th Cir.1995), *cert. dismissed,* 516 U.S. 983, 116 S.Ct. 492, 133 L.Ed.2d 418 (1995). In order to invoke the doctrine of judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court. *Id.* Judicial estoppel preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical games-

manship, achieving success on one position then arguing the opposite to suit an exigency of the moment. *Warda v. Commissioner of Internal Revenue,* 15 F.3d 533, 538 (6th Cir.), cert. denied, 513 U.S. 808, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994). Judicial estoppel only requires a finding of "judicial acceptance," *i.e.* that the first court adopted the position urged by the party, either as a preliminary matter or as a part of a final disposition. *Id.* In the prior proceeding, Judge Gwin construed the phase "a means for rigidly connecting said axle to said beam" of independent claim 16. During that proceeding, Boler asserted the proper interpretation of the above phase was "any structure whereby the axle and beam are connected, and at the point of connection, there is no significant movement of the beam and the axle relative to one another." In asserting the rational for this position, Boler distinguished independent claims 1 and 13 from independent claim 16. Boler asserted that using a 360 degree weld to rigidly connect the axle to the beam refers to elements of the invention set forth in claims 1 and 13, not claim 16. As Judge Gwin subsequently adopted Boler's earlier distinction, Boler is now judicially estopped from claiming a 360 degree weld to rigidly connecting the axle-to-beam interface is not an element of claims 1 and 13.

Alternatively, Boler asserts judicial estoppel cannot be based on a "mistake" or "inadvertence" even as to literal infringement. *See New Hampshire v. Maine,* 532 U.S. 742, 753, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Boler claims that its earlier position was a "mistake" or "inadvertence", as the literal interpretation of a 360 degree weld inherently requires the vertical sidewall to completely wrap, 360 degrees, around the axle. Boler contends such an interpretation is inconsistent with the language of claims 1 and 13, only requiring the beam to "substantially" sur-

round the axle. Boler further asserts that the term "substantially", when properly interpreted, broadens the literal scope of claims 1 and 13 to encompass a 309 degree axle wrap.[4] This argument is also without merit, for it fails to show any "mistake" or "inadvertence". Boler knowingly defined the 360 degree weld limitation of claims 1 and 13 to clearly illustrate why the court should adopt Boler's construction of claim 16 over that offered by the prior defendant.

### 4. Prosecution History Estoppel

■ A court may consider a patent's prosecution history in determining the meaning of a claim term. *Vitronics Corp.,* 90 F.3d at 1582. The prosecution history may contain contemporaneous exchanges between the patent applicant and the USPTO about what the claims mean. *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed.Cir.1998). Prosecution history estoppel prevents a patentee from claiming as their invention subject matter that was surrendered during prosecution to secure patentability. *Cybor Corp. v. FAS Techs. Inc.,* 138 F.3d 1448, 1459 (Fed. Cir.1998).

■ Prosecution history estoppel requires a close examination of not only what was surrendered, but also the reason for such surrender. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 31–33, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Estoppel normally arises when an amendment to the claim is made to overcome prior art. *Id.* However, arguments made by a patentee to the Patent Examiner to obtain allowance of a patent claim limit the scope of the claim, consistent with the patentee's arguments. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*

849 F.2d 1430, 1438 (Fed.Cir.1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). On the other hand, a non-substantive change or a change that did not affect patentability does not invoke the estoppel doctrine. *E.I. du Pont,* 849 F.2d at 1438.

■ Watson contends Boler is barred by prosecution history estoppel from asserting Watson's Integra suspension infringes claims 1 and 13 of the '237 patent. In the course of prosecuting the '237 patent, Boler failed to disclose its own TDC suspension system as prior art. After settlement was reached in the prior patent infringement allegation, the patentee filed for reexamination of the '237 patent in light of the TDC suspension. Watson contends Boler's assertions made to the USPTO during the reexamaintion of the '237 patent defined the scope of claims 1 and 13 such that the beam of Watson's Integra suspension system does not have an orifice *in the vertical sidewall that substantially surrounds or enclose the axle at the axle-to-beam interface.*

The TDC system comprises a beam having an orifice in the vertical sidewall, through which the axle passes. The orifice in the vertical sidewall of the TDC suspension is of a piecemeal construction formed by two discontinuous sidewalls welded together with bridge plates. During reexamination, Boler disclosed that they knew of the TDC suspension for at least six years prior to filing the '237 patent's parent application. Boler further asserted and affirmed, under oath to the USPTO, that; (1) the discontinuous sidewall of the TDC system does not substantially surround or encloses the axle; and (2) the TDC suspension beam, having two pieces

4. Boler asserts the piecemeal construction of Watson's Integra suspension surrounds 309 degrees of the axle at the axle-to-beam interface; 251 degrees from the beam itself, and an additional 58 degrees from the manner in which the sleeve of the Integra suspension is connected and interposed between the beam and axle.

welded together by bridge plate, fails to teach prevention of alteration of the cross-sectional configuration of the axle due to its piecemeal construction. The doctrine of prosecution history thus estoppes Boler from asserting that the structure of the prior art TDC suspension or the subject matter disavowed by Boler's arguments distinguishing the TDC suspension are within the literal scope of the '237 patent or its equivalents. *E.I. du Pont,* 849 F.2d at 1438; *Wilson Sporting Goods v. David Geoffrey & Assocs.,* 904 F.2d 677 (Fed.Cir. 1990) (noting that a patent claim cannot be interpreted so broadly as to encompass the prior art).

### B. Literal Infringement

■ In order to prevail on a claim for literal infringement, "the patentee must show that the accused products contain every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1365 (Fed.Cir.2002). "Where a claim does not read on an accused device exactly, there can be no literal infringement." *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580 (Fed.Cir.1989).

■ Watson asserts the Integra suspension does not contain an essential element of claim 1 and 13, an orifice in the suspension beam sidewalls which substantially surrounds the axle at the axle-to-beam interface, thus precluding a finding a literal infringement. Watson position is firmly support by both the '237 patent prosecution and assertions Boler made to Judge Gwin. As such, there is no genuine issue of fact as to whether the Integra suspension contains every limitation of either claim 1 or 13.

The sidewall beams of the Integra suspension possess a 251 degree circularly shaped opening through which the axle passes. Interposed between the axle and

sidewall beam opening is a sleeve which circumferentially encompassed the axle, and is bolted to the sidewall beam.

Boler asserts the Integra suspension's piecemeal construction forms an orifice which substantially surrounds the axle by 309 degrees. Boler's challenges to Watson's motion lack merit, for they rest in direct contradiction to positions earlier asserted to Judge Gwin and the USPTO.

Boler affirmatively stated that an element of claims 1 and 13 is a 360 degree weld rigidly connecting the axle to the suspension beam sidewalls. To distinguish the '237 patent invention from the prior art TDC suspension, Boler made affirmative statements to the USPTO that a discontinuous piecemeal sidewall does not substantially surround or enclose the axle; and that such piecemeal construction fails to teach prevention of alteration of the cross-sectional configuration of the axle.

Boler has failed to offer sufficient evidence to create a genuine issue of fact to support a position that a 360 degree weld to rigidly connect the axle to the suspension beam at the axle-to-beam interface is literally met by either a sidewall beam, encompassing 251 degrees of the axle, or a piecemeal construction, encompassing 309 degree of the axle.

### C. Doctrine of Equivalents

■ Where a claim does not literally read on an accused device because one or more limitations of the claim are not met exactly, infringement may, nevertheless, be found if such limitations are satisfied equivalently. *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1581 (Fed.Cir.1988) (stating that the doctrine of equivalents permits recovery for patent infringement when an accused device does not fall within a claim's literal scope). The essential inquiry is whether the accused device performs substantially the same

overall work to achieve substantially the same overall result by substantially the same means. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1949); *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987). The equivalents test is properly applied to individual claim elements, and not based on overall similarities between a claimed invention and an accused devise. *Warner–Jenkinson,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146.

 The intent of the doctrine of equivalents is to prevent someone from making unimportant and insubstantial changes or substitutions to a patented device. *Graver Tank,* 339 U.S. at 607, 70 S.Ct. 854. However, a patentee may not recapture, as an equivalent, subject matter that was abandoned or narrowed to distinguish a claimed invention over prior art or otherwise support patentability. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002); *See also Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973 (Fed.Cir.1999).

 Boler acknowledges that the TDC suspension is prior art. During reexamination of the '237 patent Boler asserted the beam of the TDC suspension is distinguishable over the '237 patent because it fails to substantially surround the axle. The beam of the TDC suspension encompasses more of axle than the beam of Watson's Integra suspension.[5] Boler now asserts the beam of Watson's Integra suspension substantially surrounds the axle at the axle-to-beam interface, as required by claims 1 and 13, under the doctrine of equivalents.

Boler narrowly construed the axle-to-beam interface of the '237 patent during reexamination. The doctrine of equivalents may not broaden the scope of the '237 patent so as to encompass subject mater disavowed in order to secure patentability over the prior art TDC suspension. Boler's argument attempts to do just that, and thus lacks merit. This Court finds that no genuine issues of fact exist with regard to Boler's infringement claim under the doctrine of equivalents.

## CONCLUSION

For the reasons set forth above, the Court finds there is no genuine issue of material fact and that Watson is entitled to judgement as a matter of law. Therefore, Watson's Motion for Summary Judgment of non-infringement with regard to Plaintiff Boler's patent infringement claim is hereby GRANTED.

It is so ordered.

## *JUDGMENT*

The above action came before the Court by Defendant, Watson & Chalin Manufacturing, Inc., on a Motion for Summary Judgment against the Plaintiff's claims in the Complaint. This Court granted the Motion for Summary Judgment. As such, the above action is hereby DISMISSED.

So ordered.

## OPINION & ORDER AMENDING JUDGMENT

This matter comes before the Court on Motion by the Defendant, Watson & Chalin Manufacturing, Inc. ("Defendant"), to Clarify and/or Alter Judgment. (Doc. # 55). Plaintiff, The Boler Company

---

5. During reexamination of the '237 patent, Boler submitted drawings of the TDC suspension to the USPTO. The drawings identify that but for two small discontinuities, where bridge plates are welded, the beam of the TDC suspension almost entirely surrounds the axle at the axle-to-beam interface.

("Plaintiff"), filed a Response to the Motion. Thereafter, Defendant filed a Reply. The Court has been advised, having reviewed the Motion, Response, Reply, this Court's Order and Opinion issued June 22, 2004, pleadings and applicable law. It is hereby determined that Defendant's Motion is GRANTED.

Defendant states in its Motion that even though this Court granted Defendant's Motion for Summary Judgment, that Order did not resolve its counterclaim against the Plaintiff for patent invalidity or Defendant's request for attorney fees, costs and expenses pursuant to 35 U.S.C. § 285. See Defendant's Motion to Clarify and/or Alter Judgment, p. 3. Although it appeared from Defendant's Motion for Summary Judgment that these issues were being waived by its statement in the introductory paragraph, "[i]f granted, the motion will dispose of the case in its entirety", apparently Defendant had no intention of waiving these arguments. See Defendant's Motion for Summary Judgment of Non–Infringement, p. 1. (Doc. # 29). Because these claims have neither been waived nor may be granted based on this Court's Order granting summary judgment for non-infringement, it is therefore proper to Grant Defendant's Motion to Alter and/or Amend Judgment. The Judgment entry dated June 24, 2004 (Doc. # 54) is HEREBY AMENDED to REMOVE Sentence 3 which states, "As such, the above action is hereby DISMISSED" and REPLACE it with the following:

"As such, Plaintiff's Complaint for Patent Infringement against the Defendant is hereby DISMISSED. Defendant's Counterclaim for patent invalidity remains pending."

The Court also notes that although it represented to the parties that it would issue a certificate of appealability for this Court's granting of Defendant's motion for summary judgment, it is determined that such would not be proper at this time and would create a piecemeal appeal in this action. See *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279 (6th Cir.1986) (referring to the historic federal policy against piecemeal appeals.). Therefore, this Court will not grant a Rule 54(b) certificate of appealability.

The parties have thirty (30) days from the date of this Order to file any dispositive motions regarding Defendant's Counterclaim. Any responses and/or replies are to be submitted according to the times articulated in Local Rule 7.1.

So ordered.

## OPINION & ORDER DENYING MOTION TO AMEND

This matter comes before the Court on Motion by The Boler Company ("Boler") to Amend Judgment of this Court's Order and Decision dated June 24, 2004. Defendant, Watson & Chalin Manufacturing, Inc. ("Watson") filed a Response to the Motion. Thereafter, Boler filed a Reply. The Court has been advised, having reviewed the Motion, Response, Reply, pleadings, exhibits, this Court's Order and Decision dated June 24, 2004, and applicable law. It is hereby determined that Boler's Motion is not well-taken and is therefore DENIED.

## DISCUSSION

Boler filed suit against Watson, alleging that Watson's "Integra" suspension infringes U.S. Patent 5,366,237 (the " '237 patent"). On June 24, 2004 the Court granted Watson's motion for summary judgment of non-infringement.

Rule 59(e) provides the trial court an efficient means to correct an otherwise erroneous judgment; however a motion under Rule 59(e) is not intended to give an

unhappy litigant an opportunity to relitigate previously decided matters or present the case under new theories. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case"). Rule 59(e) motions to alter or amend judgment are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered judgment, or to present evidence that was available earlier. *General Truck Drivers, Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434, 445 (6th Cir.1999) (Clay, J. dissenting), *cert. denied,* 528 U.S. 1137, 120 S.Ct. 980, 145 L.Ed.2d 931 (2000). "Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or preventing manifest injustice." *Id.; see also Emmons v. McLaughlin,* 874 F.2d 351, 358 (6th Cir.1989), ("it is well-established...that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had it his control prior to the original entry of judgment").

Boler's motion fails to establish a proper grounds for granting its Rule 59(e) motion. Instead, Boler requests that the Court reconsider previous arguments in addition to newly raised arguments and evidence in support thereof. (See Doc # 57, Brief in Support, pg. 1). Boler requests such consideration under advisement of newly retained counsel, asserting that Boler's prior arguments lacked clarity and those presented by Watson were disingenuous. Accordingly, as Boler's additional arguments and evidence in support thereof comprise that which could have and should have been presented before this court rendered summary judgment, they are improper for a Rule 59(e) motion.

## CONCLUSION

Based on the above, it is determined that Boler has failed to submit a valid argument for this Court to Amend its prior Order and Decision dated June 24, 2004. Therefore, Boler's rule 59(e) motion to amend judgment is hereby DENIED.

It is so ordered