NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SPEEDTRACK, INC.,**
*Plaintiff-Appellant,*

**v.**

**ENDECA TECHNOLOGIES, INC., AND WALMART.COM USA, LLC,**
*Defendants-Cross-Appellants.*

---

2012-1319

---

Appeal from the United States District Court for the Northern District of California in No. 06-CV-7336, Judge Phyllis J. Hamilton.

---

Decided: April 16, 2013

---

RODERICK G. DORMAN, McKool Smith Hennigan, P.C., of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were ALAN P. BLOCK, MARC MORRIS, and MIEKE MALMBERG; STEVEN J. POLLINGER and JOEL L. THOLLANDER, of Austin, Texas.

STEVEN M. BAUER, Proskauer Rose, LLP, of Boston, Massachusetts, argued for defendants-cross appellants.

With him on the brief was JOEL CAVANAUGH. Of counsel on the brief for defendant-cross appellant Walmat.com USA, LLC was NOEL ANDREW LEIBNITZ, Farella, Braun + Martel LLP, of San Francisco, California.

———————————

Before DYK, MOORE, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Speedtrack, Inc. ("Speedtrack") is the assignee and owner of U.S. Patent No. 5,544,360 (the "'360 patent"). Speedtrack instituted a patent infringement action against Walmart.com USA, LLC ("Walmart") alleging that Walmart infringed independent claims 1 and 20, as well as dependent claims 2–4, 7, 11–14, and 21 of the '360 patent ("asserted claims"). Endeca Technologies, Inc. ("Endeca") subsequently intervened against Speedtrack seeking a declaratory judgment of noninfringement and invalidity, claiming the allegedly infringing platform utilized in Walmart's online retail website was its proprietary product. After claim construction, the district court granted Walmart and Endeca's motion for summary judgment of noninfringement from which Speedtrack now appeals. Walmart and Endeca cross-appeal the district court's decision granting Speedtrack's motion for summary judgment holding that the '360 patent is not invalid. The district court's decisions are affirmed.

BACKGROUND

The '360 patent, entitled "Method for Accessing Computer Files and Data, Using Linked Categories Assigned to Each Data File Record on Entry of the Data File Record," is directed to a computer filing system for accessing files and data according to user-designated criteria. '360 patent at [57]. In particular, the invention allows a user to define categories for files stored in a computer system and edit those categories as they are used, label each file with all applicable categories, and to link categories in

user-definable ways. *Id.* col. 3 l. 66–col. 4 l. 2. In the process of search and retrieval of files, the invention ensures that the user defines a filter which will always find at least one file, thus avoiding time in searching and retrieving for data that cannot be matched. *Id.* col. 4 ll. 5–9.

Independent claim 1 recites, in part, the following:

A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, the method comprising the steps of:

(a) initially creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter creating in the computer system a file information directory comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table; and

(c) thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter.

*Id.* col. 16 l. 54–col. 17 l. 11. In addition, independent claim 20 states, in relevant portion:

A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the method comprising the steps of:

(a) initially defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter accepting user input associating with a file at least one category description from at least one defined list . . . .

*Id.* col. 20 ll. 1–14.  Figure 5 is exemplary of the invention.



FIG. 5

A Categories Window 50 is illustrated on the right side of the display, with a File Window 52 on the left side. *Id.* col. 8 ll. 32–34.  Category types 54 are shown at the top of the

Categories Windows 50, with category descriptions 56 shown in the columns below. *Id.* col. 8 ll. 34–36. A display of a tally 58 of the number of files matching selected categories is also shown. *Id.* col. 8 ll. 36–38. The user may edit the category type headings, category descriptions, and selection of category descriptions to apply to particular files. *Id.* col. 8 ll. 39–42, 64–65.

On November 29, 2006, Speedtrack instituted this action against, among other defendants, Walmart, alleging that Walmart's online retail website infringes the '360 patent. On April 12, 2007, the district court allowed Endeca to file a complaint in intervention against Speedtrack because Walmart's alleged infringing website uses Endeca's "Information Access Platform" in order to allow users to search for products online. As such, Endeca sought a declaratory judgment that Endeca's "Information Access Platform" does not infringe the '360 patent and that the patent is invalid. Endeca and Walmart (hereinafter, "Endeca") proceeded jointly from this point forward.

A claim construction hearing was held in March 2008, and an order construing the claims issued on June 19, 2008. *Speedtrack, Inc. v. Wal-Mart Stores, Inc.*, No. C06–7336PJH, 2008 WL 2491701 (N.D. Cal. June 19, 2008). In November 2008, the parties moved for summary judgment on infringement and invalidity issues. While the parties' summary judgment motions were pending, the Patent and Trademark Office ("PTO") granted Endeca's request for an *ex parte* reexamination of the asserted claims on January 12, 2009. The summary judgment motions were terminated, and the district court litigation was stayed pending reexamination.

On March 3, 2011, the PTO issued its decision in the reexamination proceedings, confirming the patentability of the '360 patent with an amendment—the addition of one independent claim. Subsequently, at the district court, the parties submitted cross-motions for summary

judgment. Specifically, Speedtrack's motion sought a determination of infringement and a determination that the '360 patent was not invalid. Endeca's motion was limited to the issue of noninfringement.

During the November 16, 2011 hearing on the parties' cross-motions for summary judgment, the district court recognized the need for further briefing with respect to the proper construction of the claim term "category description." After the parties submitted further briefing on this matter, the district court issued an order on February 22, 2012, in relevant part: (1) granting Endeca's motion for summary judgment of noninfringement, which was predicated on the construction of "category description" and (2) granting Speedtrack's motion for summary judgment of validity. *Speedtrack, Inc. v. Wal-Mart Stores, Inc.*, No. C06–7336PJH, 2012 WL 581338, at *11 (N.D. Cal. Feb. 22, 2012) ("Summ. J. Decision"). Speedtrack timely appeals and Endeca cross-appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Speedtrack raises the following issues on appeal: (1) whether the district court erred in the construction of the the claim term "category description"; (2) whether the district court erred in granting summary judgment of no literal infringement based on an improper construction of "category description"; (3) whether the district court abused its discretion in holding that Endeca was not judicially estopped from arguing that "category description" cannot consist solely of numeric identifiers; and (4) whether the district court abused its discretion in refusing to allow Speedtrack to amend its infringement contentions. Endeca on cross-appeal raises whether the district court erred in granting Speedtrack's motion for summary judgment of validity. We address the parties' arguments seriatim.

A.

1. The District Court Did Not Err in Construing "Category Description"

We review a district court's claim construction *de novo. Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–55 (Fed. Cir. 1998) (en banc). To ascertain the scope and meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and, if necessary, any relevant extrinsic evidence. *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1366 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315–17 (Fed. Cir. 2005) (en banc)).

"This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit." *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). The Ninth Circuit reviews a district court's grant or denial of summary judgment *de novo. Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). Summary judgment may be granted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, a court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The district court construed "category description" to mean: "information that includes a name that is descriptive of something about a stored file." Summ. J. Decision *9. The parties' dispute here centers on whether "category description" requires an alphabetic descriptive name or whether the term may include a name composed solely of nonalphbetic characters, *e.g.*, consisting solely of numbers. Speedtrack argues for the latter, whereas Endeca argues for the former definition. Upon review of the claim

language, specification, and prosecution history, "category description" is construed to require information that must include, but which is not limited to, an alphabetic descriptive name.

Turning to the claim language, independent claims 1 and 20 require "category description" to comprise a "descriptive name." This reference is instructive in that "category description" comprising a "descriptive name" is expressly distinguished from a "category description identifier." For example, dependent claim 4 covers a method for accessing files, wherein the step of creating a category description table comprises, in part, the steps of: "(3) creating a unique *category description identifier* associated with the new *category description*; and (4) storing the new *category description* and unique *category description identifier* in the category description table." '360 patent col. 17 ll. 19–30 (emphases added). Thus, the claims distinguish between a "category description" and a "category description identifier," in which case, we must presume a difference in meaning and scope between the two terms. *Chicago Bd.*, 677 F.3d at 1369.

The specification does not alter this presumption, but rather, further defines "category description" differently than "category description identifiers." For instance, the specification provides that each "category description" is a "descriptive name," which are in alphabetic form, *e.g.*, "AGREEMENTS, E–MAIL, MEMOS, NEWSLETTER, etc." '360 patent col. 5 ll. 7–11. Figure 5 also depicts "category descriptions 56 arrayed in columns below the category types 54" in alphabetic form. *Id.* fig. 5 (illustrating "category descriptions 56" as, *e.g.*, ADVANCES, BETA TESTING, BUGS, etc.).

On the contrary, the specification provides an example of "category description identifiers," explaining that it is "preferably a number, but other identifiers could be used." *Id.* col. 5 ll. 12–14 (emphasis added). The differ-

ences between a "category description" and "category description identifiers" are further illuminated in that the claimed invention can be implemented without using "identifiers," although the claimed invention must include "category descriptions." *Id.* col. 5 ll. 17–20; *see also id.* col. 5 ll. 15–16 ("If a user changes the name of a category description, the associated identifier is not changed."). Hence, the claim language and the specification distinguish between "category description," which comprises of "descriptive names" and "category description identifiers," which preferably comprises numerical identifiers. Nothing in the prosecution history alters this conclusion. Accordingly, the intrinsic evidence supports a construction where a "category description" requires information that must include, but which is not limited to, an alphabetic descriptive name.

Speedtrack nevertheless argues that Figure 4, which depicts a preferred embodiment of the file information directory, shows that category descriptions are referred to by numeric expressions and not by the associated alphabetic expression of names. Figure 4 is depicted below:

| FILE_NAME | FILE_LOC | DATE/TIME | NO_CATEGORIES | CATEGORY_ARRAY |
|-----------|----------|-----------|---------------|----------------|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |
| minutes.1 | f:\wpdocs | 10-10-90 10:10 | 3 | 009, 103, 109 |
| • | • | • | • | • |
| • | • | • | • | • |
| • | • | • | • | • |

FIG. 4

The figure illustrates an example of a File Information Directory where each entry has data fields that correspond to the file name, file location, file creation time, number of associated categories, and "an array of the *identifiers* of the associated categories." *Id.* col. 6. ll. 26–32 (emphasis added). It is the "identifiers" that are expressed in numeric form and not the "category description" as Speedtrack claims. Accordingly, Figure 4 does not detract from the clear distinction in the '360 patent between "category description" and computer-generated "category description identifiers," which preferably *may* be associated with the category description. '360 patent col 5 ll. 11-17.

The intrinsic evidence provides sufficient guidance in construing "category description," and as a result, Speedtrack's references to extrinsic evidence need not be considered. Thus, "category description" means: "information that includes a name that is descriptive of something about a stored file." "Name," as used in the claim language, requires "information" that must include, but is not limited to, a description in alphabetic form.

Likewise, because the district court's construction of this disputed term is affirmed, we hold that the district court did not err in granting Endeca's motion for summary judgment of noninfringement. In particular, it was Speedtrack's burden to demonstrate that the "walmart-sgmt0.records.binary" file in Endeca's accused system contains entries that are comprised of alphabetic descriptive names, if it was to prove that Endeca's accused system infringes. Summ. J. Decision *10. Because it is undisputed that these entries consist only of a series of numerical identifiers, Endeca is entitled to summary judgment of noninfringement as a matter of law. Therefore, the district court's decision granting Endeca's motion for summary judgment of noninfringement is affirmed.

> 2. The District Court Did Not Abuse Its Discretion in Holding That Endeca Was Not Judicially Estopped From Arguing That "Category Description" Cannot Consist Solely of Numeric Identifiers

Judicial estoppel, which is not unique to patent law, is reviewed under the law of the regional circuit in which the trial court sits. *Wang Labs., Inc. v. Applied Computer Sci., Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992). The Ninth Circuit reviews the district court's application of judicial estoppel for abuse of discretion. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking another advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–01 (9th Cir. 1996). Courts invoke judicial estoppel for "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

Several factors typically inform the decision whether to apply the doctrine in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled."  Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus no threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (citations omitted).

The district court did not abuse its discretion in refusing to apply judicial estoppel in this case.  Speedtrack argues that Endeca's arguments related to the disputed term "category description" were inconsistent with Endeca's earlier position.  In particular, Speedtrack points to Endeca's request for reexamination of the '360 patent and the invalidity arguments it presented in the request to the PTO—namely, contentions pertaining to U.S. Patent No. 5,062,074 ("Kleinberger").  Speedtrack contends that Endeca's argument before the PTO depended in significant part on the assertion that the Kleinberger reference's associated numeric identifiers satisfied the "category description" limitation in claim 1.  According to Speedtrack, that argument contradicts Endeca's position before the district court and here on appeal where it contends

that "category description" must include, but is not limited to, an alphabetic descriptive name.

The district court found Speedtrack's arguments unpersuasive. Specifically, the district court did not consider Endeca's invalidity arguments to be sufficiently "clearly inconsistent" with its infringement arguments before the district court as to present a basis for application of judicial estoppel. As Endeca contends, its arguments before the PTO challenged the '360 patent's validity under the broader construction that Speedtrack was advancing at the time in the district court.

In addition, while Speedtrack faults Endeca's position after the reexamination proceedings, the district court found nothing wrong with the parties' arguments on summary judgment which may have been modified in view of the PTO's March 3, 2011 decision confirming the patentability of all the claims in the '360 patent. Likewise, even if Endeca had taken such modified positions post-reexamination, this court is not convinced that Endeca was "successful" enough with its previous arguments for judicial estoppel to attach, and thus, there was no "the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (internal quotation marks and citation omitted). The district court did not render decisions on infringement or invalidity prior to the reexamination proceedings, and the PTO itself never adopted Endeca's contentions—the PTO confirmed the patentability of the '360 patent without any narrowing amendments.

Further, there was no unfair detriment to Speedtrack. *Id.* at 751. Speedtrack argues that if it had known Endeca's position earlier, it would have made differing infringement contentions, reexamination proceedings would not have occurred, litigation would not have been stayed for over two years, summary judgment would not have been granted and this case would be before a jury and not

this court on appeal. These speculative assertions are unpersuasive. Accordingly, because we are not left with a firm conviction that the district court made a clear error of judgment, we find no abuse of discretion in the district court's decision refusing to apply judicial estoppel in this case.

3. The District Court Did Not Abuse Its Discretion by Refusing to Allow Speedtrack to Amend Its Infringement Contentions to Include a Doctrine of Equivalents Argument

Decisions enforcing local rules in patent cases are reviewed for an abuse of discretion. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366–67 (Fed. Cir. 2006). According to Patent Local Rule 3–6 (N.D. Cal.),[1] a party may amend its infringement contentions upon a timely showing of "good cause." As the parties acknowledge, a good cause determination requires a consideration of whether the moving party has been diligent in amending its contentions. *O2 Micro*, 467 F.3d at 1366–67. Here, the district court found that Endeca first took the position that the accused method does not read upon the "category description" limitation in a supplemental response to Interrogatory No. 4 on June 23, 2011. J.A. 6. Rather than acting diligently, Speedtrack waited six months to formally move to amend its in-

---

[1] Not later than 14 days after the initial case management conference a party claiming patent infringement shall serve its infringement contentions on all parties. Patent L.R. 3–1. Not later than 45 days after service upon it of the infringement contentions, each party opposing a claim of patent infringement, shall serve on all parties its invalidity contentions. Patent L.R. 3–3. Amendment of the infringement contentions or the invalidity contentions may be made only by order of the Court upon a timely showing of good cause. Patent L.R. 3–6.

fringement contentions to include, for the first time, a doctrine of equivalents argument. The district court found that this fact weighed against Speedtrack.

In addition, the district court concluded that Endeca would be prejudiced if Speedtrack was permitted to amend its infringement contentions. For example, discovery would have to be reopened and further dispositive motions would have to be allowed that would ultimately increase the scope of litigation and further delay resolution of the case. J.A. 7. Because these determinations were reasonable, the district court did not abuse its discretion.

### B.

On cross-appeal, Endeca contends that the district court erred in granting Speedtrack's motion for summary judgment that the '360 patent was not invalid. Under *Cardinal Chemical*, once this court addresses infringement we generally must address counterclaims of invalidity. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 113 (1993). Endeca's cross-appeal however need not be addressed here, because Endeca argued that we should consider its cross-appeal only "if the Court decides to vacate [the noninfringement] decision." Appellees' Br. 63–64. Accordingly, having affirmed the judgment of noninfringement, we decline to reach Endeca's argument on cross-appeal.

### CONCLUSION

For the foregoing reasons, the district court's claim construction of "category description" and its noninfringement decision are affirmed.

**AFFIRMED**